# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:17 cv 225

| | |
|---|---|
| CYNTHIA FISHER, *Dr.*, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| WALGREEN, CO., ) | |
| ) | |
| **Defendant.** ) | |

Before the Court is Defendant's Motion to Dismiss. [# 5]. On August 17, 2017, Defendant filed a Notice of Removal [# 1] and included Plaintiff's summons and complaint, Plaintiff's amended complaint, and Defendant's notice of filing. [# 1, Ex. 1–3]. Plaintiff's Amended Complaint asserts claims of discrimination and retaliation, in violation of 42 U.S.C. § 2000e, *et seq.* (Title VII), and 42 U.S.C. § 12101, *et seq.* (the ADA); discrimination based on familial relationship; profiling; intentional infliction of emotional distress; a violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75-1.1; a violation of the Federal Trade Commission Act, 15 U.S.C. § 45; and defamation. [# 1, Ex. 2] [hereinafter *Am. Compl.*]. On September 5, 2017, Defendant filed its motion to dismiss. [# 5]. The District Court referred the motion to this Court. Accordingly, Defendant's motion is now before this Court for a Memorandum and Recommendation to the District Court. The Court will recommend that the District Court grant Defendant's motion to dismiss [# 5] and dismiss all claims in Plaintiff's Amended Complaint.

**I.     Relevant Factual Background**

Plaintiff is a pharmacist who worked for Defendant from 2004 to November 2007. [Am

Compl. pp. 4, 15].[1] At that point, Plaintiff left to start her own pharmacy: Fisher Rx Direct. [Id. at p. 4]. Plaintiff and Defendant parted amicably. [Id. at p. 11].

At some point while Plaintiff was operating Fisher Rx Direct, Plaintiff's mother began stealing drugs from the pharmacy. [Id. at p. 8]. Plaintiff was unaware of her mother's actions, and Plaintiff believes other employees may have helped her mother steal. [Id. at p. 9]. When Plaintiff found out what her mother had done, Plaintiff felt shock and horror. [Id. at p. 8–10]. Because Plaintiff was the pharmacy manager at Fisher Rx Direct while the theft occurred, Plaintiff was required to appear before the North Carolina Board of Pharmacists (NCBOP). [Am. Compl. p. 9]. NCBOP took a disciplinary action against Plaintiff and issued a consent order. [Id. at pp. 7–9]. While Plaintiff was dealing with her mother's situation, Plaintiff's business partners at Fisher Rx Direct sold the pharmacy out from under her. [Id. at p. 6]. Ultimately, Plaintiff's mother was convicted for conspiracy to steal drugs and incarcerated. [Id. at pp. 6, 8].[2]

In November 2013, Defendant bought out Kerr Drugs. [Am. Compl. p. 5]. Plaintiff had found employment at Kerr Drugs after losing Fisher Rx Direct; Defendant absorbed Plaintiff as an employee. [Id.]. At some point, district pharmacy supervisor Matt Lyall discovered that Plaintiff had previously worked for Defendant and that Plaintiff's mother had been convicted for stealing drugs from Fisher Rx Direct. [Id. at pp. 4–6, 8].

The December 2014 Meeting. In December 2014, Plaintiff was summoned to a meeting at Defendant's district office with Matt Lyall, James Satterfield, and Mike Remiller. [Am. Compl. pp. 4–6]. At that meeting, Lyall and Remiller accused Plaintiff of being a drug addict and a thief. [Id. at pp. 4, 6, 8]. Further, Satterfield alleged that Plaintiff was not following North Carolina law

---

[1] Plaintiff also holds a law degree but has not taken the bar. [Am. Compl. pp. 12, 14]. Plaintiff does not state the institution where she received her law degree.

[2] In July 2015, Plaintiff's mother was released after a ten-month incarceration. [Id. at pp. 5, 7].

regarding filling "emergency maintenance medication refills." [Id. at p. 5]. Plaintiff states Lyall had already previously verified that Plaintiff had been following the law. [Id. at p. 5]. After hearing the accusations, Plaintiff offered to take a drug test and a polygraph. [Id. at pp. 6, 9, 12]. Lyall and Remiller backed off these accusations. [Id. at p. 6].

Lyall then told Plaintiff she seemed unfriendly while she was working. [Am. Compl. p. 6]. Lyall stated that Plaintiff had not been successful working for Defendant previously and Plaintiff "would not make it this time." [Id. at p. 4]. Plaintiff informed Lyall that she might seem unfriendly due to her "hearing disability." [Id. at p. 6]. Plaintiff states that Lyall had known about her hearing and previously told Plaintiff to inform her coworkers at each store she worked at about her hearing. [Id. at p. 6]. Plaintiff is "not deaf but background noise does seem to be a major problem." [Id. at p. 6]. Plaintiff is under the care of a doctor for her hearing. [Id. at p. 6].

Lyall then moved onto the topic of Plaintiff referring to herself as a 'floater' while working. [Am. Compl. p. 6]. Plaintiff floated around (worked at) various pharmacies owned by Defendant. [Id. at p. 6]. Plaintiff states that she used this terminology to make conversation with customers and to explain to them why she did not always know where specific medications were stored. [Id. at p. 6].

Finally, Lyall told Plaintiff that she was not working as a cashier or clerk enough. [Id. at p. 7]. Plaintiff states that as floater she was working as a cashier and clerk regularly. [Id. at p. 7]. Plaintiff, however, did not liking working the drive-through window due to her hearing. [Id. at p. 7]. Plaintiff states that from this point on Lyall would begin to scrutinize her work thus creating a "hostile work environment." [Am. Compl. p. 4].

From March 2015 to May 2015, Plaintiff was watched for her use of the term 'floater' while she worked. [Id. at p. 7]. After that time, Lyall had pharmacy manager Lena Abernethy

3

verify that Plaintiff was following North Carolina law regarding emergency refills. [Id. at pp. 7, 15]. When Plaintiff found this out, she told Lyall she had been complying with the law. [Id. at p. 7].

The August 19, 2015 Meeting. Plaintiff was informed that she was to attend a second meeting on August 19, 2015. Prior to the meeting, Plaintiff asked if she could have an attorney accompany her. [Id. at p. 15]. Satterfield told Plaintiff it was against Defendant's policy to allow her to bring an attorney to the meeting. [Id. at pp. 15–16].

On August 19, 2015, James Satterfield and Mike Remiller met with Plaintiff. [Am. Compl. p. 11]. Remiller asked Plaintiff if her mother was still incarcerated. [Id. at pp. 11, 15]. Plaintiff told Remiller her mother was no longer incarcerated. [Id. at p. 11]. Then, Satterfield or Remiller said Plaintiff was not following North Carolina law regarding filling emergency medical prescriptions. [Id. at 11].[3] Plaintiff states that she followed the same procedures as two other pharmacists. [Id. at p. 11]. Plaintiff was also accused of poaching employees last time she left employment with Defendant to start Fisher Rx Direct. [Id. at p. 11]. Plaintiff disputed this. [Am. Compl. p. 11].

Remiller told Plaintiff that it "would be better if [Plaintiff] resigned." [Id. at pp. 11, 15]. Plaintiff refused to resign. [Id. at pp. 11, 15]. Plaintiff asked if Satterfield and Remiller were going to fire her. [Id. at p. 11]. Evading the question, they reiterated that it would be better if Plaintiff resigned. [Id. at pp. 11–12]. Plaintiff alleges that Remiller and Satterfield wanted Plaintiff to quit so Defendant would not have to pay unemployment. [Id. at p. 12]. Plaintiff felt devastated and "shell shocked" after the meeting. [Am. Compl. p. 12].

Plaintiff's Termination. On August 25, 2015, Satterfield asked Plaintiff to meet with him in Lenoir, North Carolina. [Id. at p. 12]. Once Plaintiff arrived, Satterfield terminated Plaintiff's

---

[3] It is unclear to the Court, but there appears to have been a misunderstanding of what Plaintiff means regarding North Carolina's legal requirements versus Walgreen Co.'s policy. [Am. Compl. p. 11].

4

employment. [Id. at pp. 1, 12, 15]. Satterfield did not wish to terminate Plaintiff over the phone or via certified letter. [Id. at p. 12]. Plaintiff states driving to Lenoir, N.C., was an inconvenience and she would have preferred being terminated another way. [Id. at p. 12]. Defendant's reason for terminating Plaintiff was that Plaintiff was not following North Carolina law. [Id. at p. 17]. Plaintiff told Satterfield she would be filing a lawsuit. [Am. Compl. p. 16].

At some point, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC) regarding Defendant's behavior. [Id. at p. 13].[4] Plaintiff alleges that Lyall, Remiller, and Satterfield lied to the EEOC. [Id. at p. 13].

## II.     Legal Standards

**Federal Rule of Civil Procedure 12(b)(6).** The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. *See* Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190–92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; *see also* Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007); *see also* Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice.

---

[4] Defendant included Plaintiff's EEOC charge in its Memorandum in Opposition. [# 6, Ex. 1]. Plaintiff filed her charge on February 2, 2016. [Id.].

Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; *see also* Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. *See also* Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

**Pro se complaints.** "The Fourth Circuit requires district courts to construe pro se complaints liberally to ensure that valid claims do not fail for lack of legal specificity." Morrison v. Res. Mgmt. Concepts, Inc., 3:16-CV-651-GCM, 2017 WL 1095067, at *2 (W.D.N.C. Mar. 21, 2017) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). While required to construe pro se complaints liberally, the Court cannot ignore when a pro se plaintiff clearly fails to allege facts to support a valid claim under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990); *see* Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The Court will not conjure up facts and insert them into a plaintiff's complaint. Further, the Court is not required to "invoke causes of action that are neither articulated nor supported by factual allegations" in the complaint. Morrison, 2017 WL 1095067, at *2.

### III. Analysis[5]

For every cause of action Plaintiff alleges violations of Title VII and the ADA. For clarity and efficiency, the Court will conduct a global analysis of Plaintiff's Amended Complaint regarding Title VII and ADA claims. Then the Court will analyze claims brought under other law.

#### A. Plaintiff's Fails to State a Claim under Title VII

Title VII in relevant part states:

It shall be an unlawful employment practice for an employer—

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's <u>race, color, religion, sex, or national origin</u>; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's <u>race, color, religion, sex, or national origin</u>.

42 U.S.C. § 2000e-2(a)(1), (2) (emphasis added).

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has <u>opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter</u>.

42 U.S.C. § 2000e-3(a) (emphasis added).[6]

---

[5] In her Response in Opposition [# 9], Plaintiff included a CD recording of a meeting between Plaintiff and agents of Defendant. "When matters outside the pleadings are presented in a response to a 12(b)(6) motion, a district court has discretion to exclude the additional material." Lawson v. Miles, No. 1:11-CV-949-AJT-IDD, 2012 WL 3242349, at *4 (E.D. Va. Aug. 6, 2012) (citing Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleadings for purposes of 12(b)."). The Court will exercise such discretion here and exclude the new factual materials in Plaintiff's CD recording. Even if the Court were to consider the recording, Plaintiff's claim would still fail.

[6] The Court finds it necessary to include the language of the statute for the benefit of pro se Plaintiff.

Title VII requires that before filing a civil action alleging a violation of Title VII in a district court, a person must first exhaust administrative remedies by filing a charge of discrimination with the EEOC or state equivalent. 42 U.S.C. § 2000e-5(e)(1), *et seq.*; Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Any subsequent civil action after filing a charge with the EEOC is limited to the contents of the charge. Jones, 551 F.3d at 300. "Only those discrimination claims stated in the initial charge, those reasonable related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). "[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones, 551 F.3d at 300.

Upon examination of Plaintiff's EEOC charge,[7] it appears Plaintiff potentially alleges discrimination based on retaliation, in violation of Title VII. Plaintiff's charge does not, however, describe a protected activity as defined by law. Because Plaintiff is pro se, and because she filed an EEOC charge and checked discrimination based on retaliation, the Court will look to the Amended Complaint to see if it contains anything reasonable related to retaliation and Title VII.

Regarding claims of retaliation under Title VII, a plaintiff must allege in her complaint: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal link between the two elements. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015).

Plaintiff successfully alleges that her employer took an adverse reactions against her:

---

[7] *See* Def. Mem. Opp. [# 6, Ex. 1].

Plaintiff's termination and Defendant's harassment of Plaintiff.[8] The Amended Complaint, however, fails to clearly establish Plaintiff engaged in a protected activity and/or there was a causal link between a protected activity and Defendant's adverse reaction.

First, Plaintiff did file a charge with the EEOC—a protected activity—but this was *after* her termination.

Second, opposition conduct is a protected activity. *See* Wilson v. City of Chesapeake, ___ F. Supp. 3d. ___, 2018 WL 837597, at *13 (E.D. Va. Feb. 12, 2018) (citing Demasters v. Carilion Clinic, 796 F.3d 409, 420 (4th Cir. 2015)). Plaintiff, however, never alleged she stated to Defendant that she thought Defendant was engaging in employment discrimination *before* Defendant terminated her or *before* the any alleged harassment started. Thus, Plaintiff does not allege she engaged in a protected activity *before* Lyall's scrutiny or *before* Satterfield terminated Plaintiff.

Finally, Plaintiff states Satterfield had a negative reaction to Plaintiff's request to have an attorney present at the August 19, 2015, meeting. Satterfield told Plaintiff that was against Defendant's policy. Plaintiff did not allege that she wanted a lawyer present to seek redress or protection from employment discrimination. Further, Plaintiff did not state as such to Defendant *before* the termination. The Amended Complaint only states that Plaintiff felt she was retaliated against because she asked for an attorney and because of her mother's "ex-convict" status. [Am. Compl. p. 16].

Even if the Court does mental gymnastics to find that Plaintiff engaged in a protected activity by stating she wanted a lawyer present, Plaintiff did not allege a causal link between the

---

[8] Plaintiff states that Defendant profiled her because Defendant "found out my mother was in prison on drug conspiracy charges." [Am Compl. p. 9]. Being profiled for having a family member who was previously in prison in no way relates to Plaintiff's race, color, religion, sex, or national origin. Thus, Plaintiff telling Defendant of her mother's ex-convict status was not a protected activity.

request and her termination. Plaintiff has not alleged facts that demonstrate that Defendant knew of the protected activity before terminating Plaintiff's employment. Plaintiff could have wanted a lawyer present for a number of reasons.

Because Plaintiff has failed to allege she participated in a protected activity as defined by the law and/or a causal link, her claims should be dismissed for failure to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Therefore, the Court will recommend Plaintiff's Title VII claims for all counts be dismissed.

### B. Plaintiff Fails to Allege a Claim under the Americans with Disabilities Act

Liberally construing the Amended Complaint, the Court finds that Plaintiff has suggested three theories of discrimination under the ADA: 1) discriminatory termination; 2) retaliation; and 3) hostile work environment. The Court takes each in turn.

The ADA in relevant part states:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms conditions, and privileges of employment.

42 U.S.C. § 12112(a).

#### i. Discriminatory Termination under the ADA

In order to successfully state a claim for discriminatory termination under the ADA, a plaintiff must show: 1) she was a "qualified individual" as defined under the ADA; 2) she was discharged; 3) she was fulfilling the legitimate expectations of her employer; and 4) the circumstances of the discharge raise a reasonable inference of unlawful discrimination. Corbett v. Richmond Metropo. Transp. Auth., 203 F. Supp. 3d 699, 705 (E.D. Va. 2016) (citing Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012)).

Plaintiff successfully alleges she is a qualified individual under the ADA and that she was

discharged. It is unclear, however, whether Plaintiff was following North Carolina law versus Defendant's policy (and if the two are in conflict with each other). [*See* Am. Compl. p. 11]. Yet, Plaintiff states she was following the law when filling emergency prescriptions. Thus, the Court will regard that assertion as true and that Plaintiff was fulfilling the legitimate expectations of her employer.

The Court does not find that the circumstances of the discharge raise a reasonable inference of unlawful discrimination. The Court considered the following factors. First, Plaintiff's EEOC charge does not describe any discrimination based on Plaintiff's hearing disability. Rather, Plaintiff states she was discriminated because of her "association with a disabled family member." [# 6, Ex. 1].

Second, in the Amended Complaint Plaintiff alleges at the December 2014 meeting Plaintiff and Lyall had a conversation about Plaintiff seeming unfriendly during work. Plaintiff offered the possibility that the unfriendly impression could be due to her hearing. Later, Plaintiff states Lyall had already known about Plaintiff's hearing before the December 2014 meeting and had instructed her to inform every pharmacy where she worked.

Third, Plaintiff does not allege anything between this conversation in 2014 and her termination in 2015 regarding her *hearing*. During that time, Plaintiff alleges that Lyall 'scrutinized' Plaintiff by having other employees monitor for her use of the term 'floater' and if she was following North Carolina law.

Fourth, ultimately, it is Satterfield not Lyall who terminated Plaintiff. The reason for Plaintiff's termination was not following the law.

Fifth, Plaintiff alleges two other employees followed the same procedures as Plaintiff regarding emergency refills and that the two employees are still employed by Defendant. Then,

Plaintiff states "I was treated differently because of . . . my hearing disability." [Am. Compl. p. 11]. Plaintiff fails to allege any facts that support this conclusory statement. For example, the Court is left without a description of the ability or disability of other two employees or any other examples of how she was treated differently *because of* her *hearing*.

Even construed liberally, the Court can only infer the termination revolved around a dispute or misunderstanding over North Carolina law and Defendant's store policy—not Plaintiff's hearing. Thus, for these reasons the Court will recommend Plaintiff's claim for discriminatory termination be dismissed.

### ii. Retaliation under the ADA

The anti-retaliation provisions in the ADA are substantially identical to Title VII's anti-retaliation provisions. Brady v. Bd. of Ed. of Prince George Cnty., 222 F. Supp. 3d 459, 474 (D. Md. 2016) (citing Haines v. Donahoe, No. 1:10-cv-293-ELH, 2012 WL 3595965, at *10 (D. Md. Aug. 20 2012), *aff'd per curiam*, 538 Fed. App'x. 329 (4th Cir. 2013)). Thus, in order to successfully allege retaliation under the ADA, a plaintiff must allege in her complaint: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal link between the two elements. *See* Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015).

As with her Title VII claims, Plaintiff successfully alleges her employer took an adverse reactions against her: Plaintiff's termination and Defendant's harassment of Plaintiff.[9] Plaintiff's Amended Complaint, however, fails to clearly establish that Plaintiff engaged in a protected activity and/or that there was a causal link between a protected activity and Defendant's adverse

---

[9] As with Plaintiff's Title VII profiling claim, under the ADA Plaintiff states that Defendant profiled her because Defendant "found out my mother was in prison on drug conspiracy charges." [Am Compl. p. 9]. Being profiled for having a family member who was previously in prison in no way relates to Plaintiff's hearing disability. Thus, Plaintiff telling Defendant of her mother's ex-convict status was not a protected activity.

reaction.

First, Plaintiff did file a charge with the EEOC—a protected activity—but this was *after* her termination.

Second, opposition conduct is a protected activity. *See* Wilson, 2018 WL 837597, at *13 (citing Demasters, 796 F.3d at 420). Plaintiff, however, never alleged she stated to Defendant that she thought Defendant was engaging in disability discrimination *before* Defendant terminated her or *before* the alleged scrutiny by Lyall started. The Amended Complaint only alleges that Plaintiff informed Lyall that his impression of her not being friendly could be due to her hearing. Even reading the Amended Complaint in the best light for Plaintiff, it appears that Lyall was aware of Plaintiff's hearing and potentially offered an accommodation by telling her to inform her other stores. Thus, the Court does not find this to be opposition conduct.

Finally, Plaintiff states Satterfield had a negative reaction to Plaintiff's request to have an attorney present at the August 19, 2015, meeting. Satterfield told Plaintiff that was against Defendant's policy. Plaintiff did not allege that she wanted a lawyer present seeking redress or protection for disability discrimination. Further, Plaintiff did not state as such to Defendant *before* the termination. As with her Title VII claims, Plaintiff only states she was retaliated against because she asked for an attorney and because of her mother's "ex-convict" status. [Am. Compl. p. 16].

Even if the Court finds Plaintiff engaged in a protected activity by stating she wanted a lawyer present, Plaintiff did not allege a causal link between the request and her termination. Plaintiff has not alleged facts that demonstrate that Defendant knew of the protected activity before terminating Plaintiff's employment. Plaintiff could have wanted a lawyer present for a number of reasons.

Because Plaintiff has failed to allege that she participated in a protected activity as defined by the law and/or a causal link, her retaliation claim should be dismissed for failure to state a claim for which relief may be granted.

### iii. Hostile Work Environment under the ADA

Plaintiff alleges a claim of hostile work environment, in violation of the ADA. The hostile work environment provisions in the ADA are modeled after Title VII's hostile work environment provisions. Sumner v. Mary Washington Healthcare Physicians, No. 3:15-CV-42, 2016 WL 5852856, at *8 n.9 (E.D. Va. Sept. 30, 2016) (quoting Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001)). In order to successfully state a claim of hostile work environment under the ADA, a plaintiff must allege: 1) she is a qualified individual as defined under the ADA; 2) she was subjected to unwelcome harassment; 3) the harassment was based on her disability; 4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and 5) some factual basis exists to impute liability for the harassment to the employer. Sumner, 2016 WL 5852856, at *8 (citing Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999)).

Regarding prong four, the level of severity and pervasiveness of alleged harassment requires a subjective and objective analysis. EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). A plaintiff must perceive the work environment to be "hostile or abusive." Ziskie v. Mineta, 547 F.3d 220, 227 (4th Cir. 2008). Additionally, a plaintiff must show that her perception was "reasonable." Id. In determining the reasonableness of a plaintiff's perception, courts look to a series of nonexclusive factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris

v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "No single factor is dispositive, and plaintiffs must meet a high standard to satisfy the severe or pervasive element of a hostile work environment claim." Sumner, 2016 WL 5852856, at *8 (citing Sunbelt Rentals, 521 F.3d at 315).

Plaintiff successfully alleges she perceived her work environment to be hostile. Plaintiff, however, does not alleges facts that allow the Court to determine that her perception was reasonable. Liberally construing the Amended Complaint, the Court finds it possible that Lyall increased his scrutiny of Plaintiff after she and him had a conversation that brought up Plaintiff's hearing disability. Plaintiff states Lyall's scrutiny began after the meeting. Yet, the facts only speak to Lyall's behavior three months after the December 2014 meeting. The behavior in question involved an employee, under the direction of Lyall, monitoring Plaintiff's use of the term 'floater.' Further, Defendant's behavior involved a pharmacy manager verifying that Plaintiff was filling emergency refills according to North Carolina law.

First, the Court does not find the behavior by Lyall and his associates as discriminatory on its face. Second, without more facts, the alleged harassment does not appear to be severe (i.e., supervisors monitoring employee activity). The behavior does not appear to be physically intimidating or humiliating. Finally, Plaintiff does not allege Defendant's behavior interfered with her work performance. Therefore, the Court does not find reasonable Plaintiff's perception of a hostile work environment—based on her hearing disability. Accordingly, the Court will recommend Plaintiff's claim for hostile work environment be dismissed.

For the reasons above, the Court will recommend all of Plaintiff's claims under the ADA be dismissed.

### C. Plaintiff's Claim of "Family Relationship Discrimination"

The Court cannot find that Plaintiff's family relationship discrimination claim is addressed

by Title VII or the ADA. The Court has provided the text of Title VII and the ADA to show pro se Plaintiff what those laws cover.

Construing the Amended Complaint *very* liberally, the Court finds that Plaintiff might be attempting a claim for familial discrimination via the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, Moore v. City of East Cleveland, Ohio, 431 U.S. 494 (1977). A claim for such discrimination requires a state action. Shelley v. Kraemer, 334 U.S. 1, 13 (1948) ("[A]ction inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful."). Plaintiff alleges Defendant, a private actor, discriminated against her because of Plaintiff's affiliation with her mother who was an ex-convict. Because Defendant is a private actor and not a state actor, this claim must fail. Therefore, the Court will recommend Plaintiff's "family relationship discrimination" claim be dismissed.

**D. Intentional Infliction of Emotional Distress**

In order to satisfy a claim for intentional infliction of emotional distress (IIED) in North Carolina, a plaintiff must allege facts demonstrating: "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." Holloway v. Wachovia Bank & Trust Co., N.A., 452 S.E.2d 233, 240 (N.C. 1994) (quoting Dickens v. Puryear, 276 S.E.2d 325, 335 (N.C. 1981)); Guthrie v. Conroy, 567 S.E.2d 403, 408 (N.C. Ct. App. 2002). "Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."" Guthrie, 567 S.E.2d at 408–09 (quoting Briggs v. Rosenthal, 327 S.E.2d 308, 311 (N.C. Ct. App. 1985), *cert. denied*, 332 S.E.2d 479 (N.C. 1985)). Whether or not conduct constitutes the type of extreme and outrageous conduct that could give

rise to an IIED claim is a question of law. Johnson v. Colonial Life & Accident Ins. Co., 618 S.E.2d 867, 872–73 (N.C. Ct. App. 2005); Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000).

The North Carolina courts have circumscribed the level required by law to qualify as "outrageous" conduct. The conduct must be "atrocious, and utterly intolerable in civilized community." Guthrie, 567 S.E.2d at 408–09. This differs from "behavior universally regarded as inappropriate and abhorrent." Oritz v. Big Bear Events, LLC, 3:12-CV-341-RJC-DCK, 2013 WL 247444, at*4 (W.D.N.C. Jan. 23, 2013).

Plaintiff's claim fails at step one. Examples of "outrageous conduct" include: excessive force used by a police officer, *see* Pruett v. Town of Spindale, N.C., 162 F. Supp. 2d 442, 447–48 (W.D.N.C. 2001), breaking and entering into another person's home to covertly install video cameras, Miller v. Brooks, 472 S.E.2d 350, 356 (N.C. Ct. App. 1996), spreading and repeating a rumor that someone is suffering from HIV or AIDS, Chapman by and through Chapman v. Bird, 475 S.E.2d 734, 739 (N.C. Ct. App. 1996), *rev. denied*, 485 S.E.2d 50 (N.C. 1997), and where a man advanced on woman with a knife after she refused his sexual advances, Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 121 (N.C. Ct. App. 1986).

Examples of what has not been included as "outrageous conduct" include: allegations of racial discrimination, Frazier v. First Union Nat'l Bank, 747 F. Supp. 1540, 1554 (W.D.N.C. 1990), and someone disclosing medical records for the purpose preventing a person from gaining employment, French v. U.S. ex rel. Dept. of Human Health & Human Service, 55 F. Supp. 2d 379, 383 (W.D.N.C. 1999).

Here, Plaintiff does not allege facts that rise to the level of outrageous conduct. Plaintiff personally felt the conversations she had with Lyall, Satterfield, and Remiller were outrageous.

17

Plaintiff thought as such because she interpreted their remarks as insensitive, rude, intimidating, and impugning her character. Further, Lyall scrutinized Plaintiff for the use of the term 'floater,' and Lyall monitored Plaintiff's procedures in refilling emergency prescriptions. While these actions combined are potentially inappropriate, they are not outrageous conduct. Therefore, the Court will recommend Plaintiff's claim for IIED be dismissed.

### E. Claims under 15 U.S.C. § 45 and N.C. Gen. Stat. § 75-1.1

The Court construes Plaintiff's claim that Defendant violated "Federal Unfair and Deceptive Trade Acts" as a claim that Defendant violated 15 U.S.C. § 45 of the Federal Trade Commission legislation. "[C]ivil actions based upon this statute are to be filed by the Federal Trade Commission, not private litigants." Gutierrez v. East Beach Bay-Marine Marina, Inc., No. 2:14-CV-476, 2015 WL 13064927, at *4 (E.D. Va. Sept. 23, 2015) (citing 15 U.S.C. § 57b(a)) *aff'd per curiam*, 639 F. App'x 179 (4th Cir. 2016). In other words, only the Federal Trade Commission, and not a private party like Plaintiff, may bring a claim under 15 U.S.C. § 45. Accordingly, the Court will recommend Plaintiff's claim of "Federal Unfair and Deceptive Trade Acts" be dismissed.

Plaintiff also bring a claim under N.C. Gen. Stat. § 75-1.1, also known as North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA). The basis of Plaintiff's UDTPA claim comes from her assertions that Defendant lied to its employees and did not allow employees to have "an attorney to help them in a meeting in which they are going to be attacked and treated hostilely." [Am. Compl. p. 14].

UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Bickley v. Fordin, ___ S.E.2d ___, 2018 WL 943441, at *2 (N.C. Ct. App. Feb. 20, 2018) (quoting N.C. Gen.

STAT. § 75-1.1). The North Carolina supreme court has instructed that UDTPA covers acts between a "business with another business(es) or a business with a consumer(s)." Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Asso'c, Inc., 805 S.E.2d 147, 157 (N.C. Ct. App. 2017) (citing White v. Thompson, 691 S.E.2d 676, 679–80 (N.C. 2010)). Further, North Carolina courts have stated UDTPA "does not cover employer-employee relations[.]" Dotson v. Sears, Roebuck & Co., No. 1:00-CV-280, 2001 WL 1019877, at *1 (W.D.N.C. July 5, 2001) (quoting HAJMM Co. v. House of Raeford Farms, Inc., 403 S.E.2d 483, 492 (N.C. 1991)). Plaintiff's claim clearly arises from employer-employee relations. Accordingly, Plaintiff's claim is not recognized under UDTPA. Therefore, the Court will recommend Plaintiff's UDTPA claim be dismissed.

### F. Plaintiff's Defamation Claim

Plaintiff's final claim against Defendant is for defamation, including slander per se and libel. In North Carolina, the statute of limitations is one year for slander and libel. N.C. GEN. STAT. § 1-54. Thus, the latest possible date Plaintiff may have brought her slander and libel claims was August 25, 2016. Plaintiff filed her Complaint on July 19, 2017.

On February 2, 2016, Plaintiff filed her charge with the EEOC. Unfortunately for Plaintiff, she did not at that time allege facts the Court can construe as a claim of slander or libel. Thus, the statute of limitations applies. Plaintiff's claim is time barred. The Court will recommend Plaintiff's defamation claims be dismissed.

## IV. Conclusion

The Court **RECOMMENDS** the District Court **GRANT** Defendant's Motion to Dismiss [# 5] and dismiss all claims in Plaintiff's Amended Complaint.

Signed: April 23, 2018

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge

### Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208 (1984).