UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:17-cv-225-MOC-DLH

| | | |
|---|---|---|
| **DR. CYNTHIA FISHER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **WALGREENS,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on review of a Memorandum and Recommendation issued in this matter. In the Memorandum and Recommendation ("M&R"), the Honorable Dennis L. Howell, United States Magistrate Judge, advised the parties of the right to file objections within 14 days (plus three days for service by mail, inasmuch as plaintiff is proceeding *pro se*), all in accordance with 28 U.S.C. § 636(b)(1)(c). Objections (#14) have been filed within the time allowed; however, those objections are general and are not directed to any particular finding or determination of Judge Howell. In sum, plaintiff's only "Objection" is as follows:

> I, Cynthia Fisher, plaintiff, appearing before this court pro se and in Forma Pauperis object to the Magistrate's Memorandum and Recommendation in its entirety.
> Plaintiff is genuinely perplexed by the Magistrate's Memorandum and Recommendations, (#11) filed April 23, 2018, and respectfully express their Objections, pursuant to 28 USC, 636(b)(l)(C), and request that the Magistrate's recommendations not be followed, that Plaintiff action not be dismissed, and that her motions to the Court be granted.

Objections (#14) at 2 (errors in the original). Plaintiff then devotes most the remainder of her 18-page Objection to reasserting the arguments made in opposition to the Motion to Dismiss and reciting the docket entries made in this case.

At page 9 of the Objection, plaintiff then includes a section captioned "New Amended Complaint" in which she appears to attempt to assert a number of additional claims. After the "Conclusion" of the "New Amended Complaint," plaintiff then states that "I have not filed an Amended Complaint at the Federal level, so I pray for the court to grant my Motion for an Amended Complaint." Objections (#14) at 14. The Court concludes that this is a Motion to Amend and will address the request herein.

## FINDINGS AND CONCLUSIONS

### I. Applicable Standard

The *Federal Magistrates Act of 1979*, as amended, provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200.

### II. Motion to Amend

Read liberally, plaintiff appears to be moving to amend her Amended Complaint. A response "is not an appropriate means to request leave to amend a complaint." Jemsek v. N.C. Med. Bd., 2017 WL 696721, at *12 (E.D.N.C. Feb. 21, 2017); accord Drager v. PLIVA USA, Inc.,

741 F.3d 470, 474-75 (4th Cir. 2014). While inclusion of a motion in an Objection is also not allowed by Local Civil Rule 7.1, the Court will overlook that error and consider the merits of the request.

Under Rule 15(a)(2), the "'grant or denial of an opportunity to amend [a complaint] is within the discretion of the District Court.'" Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Denial of leave to amend is appropriate when "(1) 'the amendment would be prejudicial to the opposing party;' (2) 'there has been bad faith on the part of the moving party;' or (3) 'the amendment would have been futile.'" Scott, 733 F.3d at 121 (quoting Laber v. Harvey, 438 F.3d 404, 426–27 (4th Cir. 2006)).

Plaintiff attempts to amend her complaint once more to include more claims under Title VII, the ADA, the ADAA, and other causes of action. Review of the proposed amendments reveal that they are futile inasmuch as they neither cure the errors found by Judge Howell nor assert any additional claims that would, as pled, be viable. Indeed, virtually all of these amendments would be futile given that plaintiff has not exhausted her administrative remedies by first filing related charges with the EEOC first. A plaintiff must file charges with the EEOC on specific issues before proceeding here on those issues. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996).

The Court will deny the request to amend as the better course of action is to dismiss the action without prejudice, thereby possibly affording plaintiff an opportunity to draft a Complaint that conforms to Rule 8(a).[1] Indeed, plaintiff discusses in her Objections the fact that an attorney is willing to take on her case, but that she needs time to retain the attorney. Further, the Court

---

1     The Court makes no determination on whether any future filing would be timely.

finds that by dismissing the fatally defective Complaint without prejudice and denying the equally flawed Motion to Amend, the Court safeguards plaintiff's right to *meaningful* access to the Court if in fact she believes he was harmed by defendant's product.

## III. Considering the Objections

As discussed above, plaintiff's Objection (#14) is a general objection as is does not address any specific findings or determinations contained in the M&R, but instead reasserts arguments already analyzed by Judge Howell. Put another way, plaintiff's Objections do not inform this Court in what manner she believes Judge Howell's decision to be wrong, only that it is wrong as it did not find in her favor. With there being no specific objection, the Court adopts the M&R and will dismiss this action without prejudice. See Thomas, 474 U.S. at 149; Camby, 718 F.2d at 200.

Inasmuch as a district judge is responsible for the final determination and outcome of the case, and in light of plaintiff's *pro se* status, the Court has conducted a careful review of Judge Howell's Memorandum and Recommendation. That review also leads the Court to affirm Judge Howell and to dismiss this action without prejudice.

### A. *Plaintiff's Title VII claims*

First, the court will review the recommendation as to plaintiff's claim under Title VII. Plaintiff argues that she was discriminated against because she has a law degree, her mother was an ex-convict, because she suffered from a hearing disability, and because of her age. Accepting plaintiff's allegations as true as it must under Rule 12(b), none of the categories is a recognized "protective categories" which could provide plaintiff with standing to bring a claim under Title VII.

Title VII prohibits employers from committing discriminatory acts against employees

based on their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)-(2). Other Title VII protections exist, such as prohibiting employers from discriminating because an employee, who might not fit into one of those categories, "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

None of plaintiff's allegations are for discriminatory treatment based on her race, color, religion, sex, or national origin, though plaintiff's EEOC charge did show that plaintiff checked the box for discrimination based on retaliation. A viable Title VII retaliation claim, however, requires plausible allegations that the plaintiff engaged in a protected activity, that her employer took an adverse employment action against her, and there was a causal link between the two. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015). While plaintiff does allege an adverse employment action in the form of her termination, none of plaintiff's allegations can be construed as protected activity. Essentially, plaintiff contends that she was terminated in retaliation for her mother being convicted of stealing drugs from the previous pharmacy where plaintiff worked, as well as in retaliation for other personal reasons, such as having a law degree. While filing an EEOC charge is in itself a protected activity, plaintiff only did so after termination; thus, a retaliation claim cannot be based on that later event.

Put another way, Title VII does not make the federal courts the arbiter of all employment disputes. It does protect employees from being fired because their employer does not like them, does not trust them, or simply does not want them as an employee anymore. Rather, Title VII protects employees from being harmed in their employment due to unlawful discriminatory

animus. Having failed to allege an actionable cause under Title VII for employment discrimination or retaliation, her Title VII claim fails as a matter of law, and the court will affirm the M&R and dismiss this claim.

### B.     *Plaintiff's claims under the Americans with Disabilities Act ("ADA")*

Next, the court will consider plaintiff's claims under the ADA. After closely reviewing plaintiff's Amended Complaint and liberally construing the allegations therein, plaintiff appears to allege three theories of discrimination under the ADA: discriminatory termination; retaliation; and hostile work environment. The court will consider each in turn.

#### 1.     *Discriminatory Termination*

As a preliminary matter, it appears that plaintiff did not exhaust her administrative remedies for this claim, either. In her EEOC charge, plaintiff alleges only that she was treated unfairly due to her "association with a disabled family member" and was "regarded as" disabled, but not actually disabled. The EEOC also explicitly listed the basis for plaintiff's claim as "Disability: Relationship/Assn and Regarded As Disabled." Plaintiff has thus not exhausted her administrative remedies with respect to a claim that she was discriminated against on the basis of an actual disability. Even assuming that a "regarded-as" claim could proceed, plaintiff's claim still cannot survive.

A discriminatory termination claim under the ADA requires plaintiff to allege and later prove that she: (1) was a qualified individual as defined by the ADA; (2) was discharged; (3) was fulfilling the legitimate expectations of her employer; and that (4) the circumstances of the discharge raise a reasonable inference of unlawful discrimination. Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (citation omitted). Here, plaintiff has successfully

demonstrated that she was a qualified individual under the ADA due to her hearing disability, and that she was discharged. Construed liberally and assuming plaintiff's contention that her actions were legal is true, the court will infer for now that plaintiff was fulfilling her employer's legitimate expectations.

However, the court cannot find that plaintiff has successfully alleged that the circumstances of her discharge raise a reasonable inference of unlawful discrimination. In her EEOC charge, plaintiff does not actually allege discrimination based on her hearing disability, but rather claims she was discriminated against because of her association with a disabled family member. Plaintiff also claims that two other pharmacists were treated differently than her and that this was because of her hearing disability. But when plaintiff alleges facts to support this claim, they have nothing to do with her hearing disability. Plaintiff's facts in support are that she was scrutinized and placed under observation by defendant through other employees for her use of the term "floater" and to see if she was following the law in filling prescriptions.

The only time plaintiff alleges facts related to her hearing is in a conversation with a supervisor about plaintiff seeming unfriendly at work, and plaintiff offered the possibility that the unfriendly impression could be due to her hearing loss. When discussing her termination, plaintiff argues that she followed North Carolina law and defendant's policies but does not mention her hearing or any impact her disability had on her termination.

As such, in addition to failure to exhaust her administrative remedies, the court cannot find that plaintiff has pleaded sufficient facts to support her allegation of discriminatory termination under the ADA and will affirm the M&R on this count and dismiss this claim.

## 2. *Retaliation*

The ADA's anti-retaliation provisions are substantially similar to Title VII's; thus, to successfully allege retaliation under the ADA, plaintiff must allege that she engaged in a protected activity, that her employer took an adverse employment action against her, and there was a causal link between the two. Boyer-Liberto, 786 F.3d at 281. As with plaintiff's Title VII claim, plaintiff has successfully alleged an adverse employment action in the form of her termination.

However, similar to plaintiff's Title VII claim, plaintiff has not alleged a protected activity or the accompanying causal link. Again, plaintiff did file a charge with the EEOC (which qualifies as a protected activity), but not until after she had already been terminated. Again, plaintiff only alleges retaliation for things besides her hearing disability, such as her mother's criminal history. None of what plaintiff alleges can be construed as protected activity, and even if she could, plaintiff has not alleged a causal link between any of these events and her termination. As such, the court will affirm the M&R on this count and dismiss this claim.

## 3. *Hostile Work Environment*

Finally, plaintiff alleges a hostile work environment claim. To survive Rule 12(b)(6), plaintiff must allege she is a qualified individual as defined by the ADA, she was subjected to unwelcome harassment, the harassment was based on her disability, the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment, and some factual basis exists to impute liability for the harassment to defendant. Sumner v. Mary Washington Healthcare Physicians, 2016 WL 5852856, at *8 n. 9 (E.D. Va. Sept. 30, 2016) (citing Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999)). For the fourth prong, severity and pervasiveness requires subjective and objective analysis. EEOC v. Sunbelt Rentals, Inc., 521 F.3d

306, 315 (4th Cir. 2008).

Here, even construing the Amended Complaint as liberally as possible, the court cannot find that plaintiff has managed to plead facts necessary to allege a hostile work environment claim under the ADA. Plaintiff has alleged that she was a qualified individual due to her hearing disability, that some factual basis exists to impute liability to defendant, and (reading every possible inference into her complaint) the court will accept for now that plaintiff has demonstrated she was subjected to unwelcome harassment. However, as outlined above, plaintiff has not alleged that the purported harassment was based on her disability. Rather, both plaintiff's allegations and arguments continue to point to plaintiff's belief that her trouble at work was caused by her relationship with her mother, who had been convicted of stealing prescription drugs from her previous pharmacy. Little to no mention of harassment due to her hearing loss is made, beyond a conclusory statement that she was harassed due to her hearing.

Nor has plaintiff offered facts to show that any such harassment was sufficiently severe or pervasive. Subjectively, a plaintiff must perceive the work environment to be "hostile or abusive." Ziskie v. Mineta, 547 F.3d 220, 227 (4th Cir. 2008). The court will assume that plaintiff has done so. However, plaintiff must show that her perception was objectively "reasonable." Id. To determine whether plaintiff's perception is reasonable, courts look to a variety of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "No single factor is dispositive, and plaintiffs must meet a high standard to satisfy the severe or pervasive element of a hostile work environment claim." Sumner, 2016 WL 5852856, at *8 (citing Sunbelt

Rentals, 521 F.3d at 315).

Thus, plaintiff appears to allege that, because a supervisor and other employees monitored her behavior, such workplace activity constituted harassment. She also points to feeling insulted by comments made by defendant's employees during meetings about how she wouldn't make it as an employee. None of plaintiff's allegations appear to reference conduct that is either frequent or severe, or physically threatening or humiliating. Indeed, taken in the light most favorable to plaintiff, the comments are at best the kind of "mere offensive utterance" that cannot qualify for such a claim. Harris, 510 US. at 23. Finally, plaintiff has not alleged any interference with her work performance. Thus, without plausible allegations of fact that would support her claim, the court cannot find that plaintiff has actually alleged a hostile work environment, and will affirm the M&R on this count and dismiss this claim.

### C. *Plaintiff's Family Relationship Discrimination Claim*

Next, the court considers plaintiff's family relationship discrimination claim, as plaintiff alleges that defendant discriminated against her due to her mother's criminal history. The court cannot find such a claim, even construed liberally, can be covered by the protected classes enumerated by Title VII or the ADA.

The only possible match for plaintiff's claim appears to be a claim for familial discrimination under the Due Process Clause of the Fourteenth Amendment. See Moore v. City of East Cleveland, Ohio, 431 U.S. 494 (1977). Clearly, a governmental employer cannot base employment decisions on the actions of a family member of a governmental employee. Walgreens is not, however, a state actor, and a Due Process claim requires state action. Shelley v. Kraemer, 334 U.S. 1, 13 (1948) ("[A]ction inhibited by the first section of the Fourteenth Amendment is

only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful."). Since defendant is a private actor, not a state entity, plaintiff's claim must fail as a matter of law. As such, the court will affirm the M&R on this count and dismiss this claim.

### D. *Plaintiff's Intentional Infliction of Emotional Distress Claim*

Next, the court has reviewed plaintiff's claim of intentional infliction of emotional distress ("IIED"). To allege an IIED claim in North Carolina, plaintiff must allege facts demonstrating: "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." Holloway v. Wachovia Bank & Trust Co., N.A., 452 S.E.2d 233, 240 (N.C. 1994) (quoting Dickens v. Puryear, 276 S.E.2d 325, 335 (N.C. 1981)). Extreme and outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Briggs v. Rosenthal, 327 S.E.2d 308, 311 (N.C. Ct. App. 1985), cert. denied, 332 S.E.2d 479 (N.C. 1985). Whether or not conduct constitutes the type of extreme and outrageous conduct that could give rise to an IIED claim is a question of law. Johnson v. Colonial Life & Accident Ins. Co., 618 S.E.2d 867, 872-73 (N.C. Ct. App. 2005); Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000).

In support of her claim of intentional infliction of emotional distress, plaintiff allegess that a supervisor and a loss prevention officer treated her horribly in a meeting, that defendant accused her of being a thief and a drug addict, that defendant mentioned a crime that her mother committed to spite her, and that another supervisor made her drive 90 minutes to another location before firing her instead of terminating her via phone or email. Even taken together and accepting plaintiff's

version of events as entirely true, the court cannot find that defendant's allegations plausibly allege "extreme and outrageous" conduct, which is narrower than one might think under North Carolina law.

First, "[i]n employment actions, North Carolina courts have been reluctant to find intentional infliction of emotional distress claims actionable." Haburjak v. Prudential Bache Securities, Inc., 759 F.Supp. 293, 302 (W.D.N.C. 1991) (citing cases). Thus, "even when a defendant's actions during the course of employment are considered 'intemperate,' such conduct will generally be insufficient to state a cause of action for intentional infliction of emotional distress." Buser v. S. Food Serv., Inc., 73 F. Supp. 2d 556, 573 (M.D.N.C. 1999). Second, extreme and outrageous conduct must be something truly terrible, such as a threat to life. See Pruett v. Town of Spindale, N.C., 162 F.Supp.2d 442, 447-48 (W.D.N.C. 2001) (excessive force used by a police officer qualifies as extreme and outrageous); Hogan v. Forsyth Country Club Co., 79 N.C.App. 483, 490 (advancing on a woman with a knife after she refused sexual advances qualifies as extreme and outrageous). While those are more extreme examples, they nevertheless highlight the severity of conduct required to sustain a claim for intentional infliction of emotional distress. And again, even if the events described by plaintiff happened precisely as she described, they cannot be called extreme and outrageous as a matter of law, and a variety of courts have agreed when claimants have brought charges similar to plaintiff's. See Hogan, 79 N.C.App. at 493-94 (conduct was not extreme and outrageous even though co-employee screamed and shouted at claimant, called her names, interfered with supervision of waitresses under her charge, and threw menus at her); Patel v. Scotland Mem'l Hosp., 1995 WL 319213 (M.D.N.C. 1995) (allegations that defendants spread falsehoods about claimant, even if true, do not qualify as extreme and

outrageous); Gray v. Laws, 915 F.Supp. 747 (E.D.N.C. 1994) (defendants' alleged personal bias and failure to follow proper dismissal procedure not extreme and outrageous).

Thus, plaintiff has failed to allege plausible facts which if later proved could support a jury finding in her favor on an IIED claim.

*Plaintiff's Federal Unfair and Deceptive Trade Acts claim*

Next, the court has reviewed plaintiff's claim that defendant violated "Federal Unfair and Deceptive Trade Acts." Construed liberally, plaintiff alleges that defendant has violated 15 U.S.C. § 45(a)(1), which states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." However, "civil actions based upon this statute are to be filed by the Federal Trade Commission, not private litigants." Gutierrez v. East Beach Bay-Marine Marina, Inc., 2015 WL 13064927, at *4 (E.D. Va. Sept. 23, 2015) (citing 15 U.S.C. §57b(a)), aff'd per curiam, 639 F. App'x 179 (4th Cir. 2016). As a private litigant like plaintiff may not bring a claim under 15 U.S.C. § 45(a)(1), the court will affirm the M&R on this count and dismiss this claim.

### E. **Plaintiff's North Carolina Unfair and Deceptive Trade Practices Act claim**

Next, the court has reviewed plaintiff's claim that defendant violated North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1. Plaintiff argues that defendant lied to their employees and did not allow employees to have "an attorney to help them in a meeting in which they are going to be attacked and treated hostilely." Plaintiff's Amended Complaint, #1-2 at 14. However, the Supreme Court of North Carolina has held that UDTPA claims are meant to control "two types of interactions in the business setting: (1) interactions between businesses, and (2) interactions between businesses and consumers." White

v. Thompson, 364 N.C. 47, 52 (2010). More explicitly, the Supreme Court of North Carolina has held that the UDTPA "is not intended to apply to all wrongs in a business setting," including "employer-employee relations."

Plaintiff's claim is unequivocally one of employer-employee relations, and even the most liberal construction of plaintiff's UDTPA claim cannot save it from dismissal as it simply does not state an actionable claim under well-settled law. As such, the court will affirm the M&R on this count and dismiss this claim.

### F. *Plaintiff's Defamation Claim*

Finally, the court has reviewed plaintiff's claim against defendant for defamation, including slander *per se* and libel. However, little analysis is necessary on this issue; as noted in the M&R, the statute of limitations in North Carolina for such claims is one year. See N.C. Gen. Stat. §1-54. The last possible date on which plaintiff could have brought her slander and libel claims was August 25, 2016; however, plaintiff filed her original Complaint on July 19, 2017. Plaintiff did file her charge with the EEOC on February 2, 2016; however, none of the facts she alleged at that time could be construed, however liberally, as a claim of slander or libel. As such, the court will affirm the M&R on this count and dismiss this claim.

## IV. Conclusion

The court has closely reviewed every count of plaintiff's Amended Complaint, as well as the M&R issued in this matter and plaintiff's objections. After such review, the court agrees with the magistrate judge's findings and will affirm the M&R and dismiss plaintiff's claims. However, such dismissal will be without prejudice. Plaintiff's Motion to Amend will also be denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Motion to Amend (contained in the Objection) is **DENIED**, the Memorandum and Recommendation (#11) is **AFFIRMED,** defendant's Motion to Dismiss (#5) is **GRANTED,** and this action is **DISMISSED** without prejudice.

Signed: August 6, 2018

Max O. Cogburn Jr
United States District Judge