UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:17-cv-00225-MOC-WCM

| | |
|---|---|
| **CYNTHIA FISHER**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | )     **ORDER** |
| | ) |
| **WALGREENS**, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Remand from the United States Court of Appeals for the Fourth Circuit. Through its Opinion (#21) and by way of its Mandate (#22), the Appellate Court instructs this Court to determine whether plaintiff should be allowed another opportunity to amend her previously Amended Complaint as to the claims over which this Court had jurisdiction. If the Court determines that further amendment would not cure the defects, the Appellate Court instructs this Court to dismiss those claims with prejudice, rendering the order of dismissal a final, appealable order. In conformity with the instructions of the Fourth Circuit in its Opinion, the Court makes the following findings, conclusions, and determination that further amendment would not cure the previously identified defects.

**FINDINGS AND CONCLUSIONS**

**I.  Background**

Inasmuch as the task on remand requires careful consideration of the claims and the facts alleged in support of those claims, the Court will review plaintiff's claims as expressed in her Amended Complaint.

-1-

***

Prior to opening her own independent pharmacy, plaintiff worked for defendant as a pharmacist between 2004 and 2007.[1] While operating her own pharmacy, plaintiff's mother stole drugs from the business. When the theft was discovered, her mother was prosecuted, convicted, and incarcerated for the offense, and plaintiff, as manager of the pharmacy, received a consent disciplinary order from the North Carolina Board of Pharmacists ("NCBOP") due to deficiencies in oversight. During this period, the independent pharmacy was sold. Plaintiff remained a licensed pharmacist.

After her independent pharmacy closed, plaintiff sought and secured employment at Kerr Drugs. In 2013, defendant bought out Kerr Drugs and absorbed its employees. Thereafter, defendant's pharmacy supervisor discovered that plaintiff had worked for defendant in the past and that plaintiff's mother had been convicted of stealing drugs from the plaintiff's pharmacy.

A meeting was called in December 2014, at which plaintiff, the pharmacy supervisor, and two other managers. According to plaintiff, the two other managers accused her of being an addict and a thief and alleged that she was not following North Carolina law concerning emergency refills. Plaintiff contends that they already knew she was following the law and that, as to personal allegations, they backed off of those when she offered to submit to a drug test and polygraph. Plaintiff contends that defendant's management employees then shifted their criticisms to plaintiff's professional demeanor. One manager told plaintiff she seemed unfriendly while she was working, that she had not been successful working for defendant previously, and that she "would not make it this time." Am. Compl. at 4. Plaintiff reports that she responded to this line of

---

1  Plaintiff reports that in addition to being a pharmacist, she had a law degree. Am. Compl. at 12 & 14. The Court has, however, treated plaintiff as a traditional *pro se* litigant.

attack by stating that she might seem unfriendly due to her hearing disability and that the manager had known about her hearing and previously told plaintiff to inform her coworkers at each store she worked at about her hearing. Plaintiff contends that this manager then criticized her for referring to herself as a 'floater' while working. Plaintiff explained that she worked at various pharmacies owned by Defendant and used the "floater" terminology to make conversation with customers and to explain to them why she did not always know where specific medications were stored. This same manager then criticized plaintiff for not working as a cashier or clerk enough, but plaintiff countered that she was working as a cashier and clerk regularly. Plaintiff admitted that she did not liking working the drive-through window due to her hearing impairment. As a result of the December 2014 meeting, plaintiff contends that this manager would thereafter scrutinize her work, creating what she described as a hostile work environment. Am. Compl. at 4.

The following year, from March 2015 to May 2015, plaintiff alleges that she was watched for her use of the term 'floater' while she worked. Management also required her pharmacy manager to verify that plaintiff was following state law concerning emergency refills and when she found out about this oversight, plaintiff again told management that she had been complying with state law.

Later that year in August, plaintiff was required to attend a second meeting with management. When she asked whether she could bring her lawyer with her, plaintiff contends that management told her that it was against company policy. During that meeting, two member of management asked plaintiff if her mother was still incarcerated, and plaintiff told them no. These managers then again accused plaintiff of not following North Carolina law regarding filling emergency medical prescriptions. Plaintiff responded that she followed the same procedures as

two other pharmacists. Plaintiff then contends that the managers accused her of poaching employees the last time she left defendant to start her independent pharmacy, which plaintiff also disputed. She contends that it was at this point that the managers asked her to resign. Plaintiff then asked if they were going to fire her and, after evading that question, they reiterated that it would be better if plaintiff resigned. She contends that the managers wanted her to resign so defendant would not have to pay unemployment. Plaintiff contends that as a result of the August 215 meeting, she felt devastated and "shell shocked." Am. Compl. at 12.

Later that month, one of the managers asked plaintiff to meet with him at his office. On August 25, 2015, the manager terminated plaintiff's employment with defendant. The reason given for that employment action was that she was not following North Carolina law. Plaintiff contends that the manager did not want to terminate plaintiff over the phone or by mail. She further contends that driving to Lenoir was an inconvenience and she would have preferred being terminated another way. Plaintiff alleges that in response to the firing, she told the manager that she would be filing a lawsuit.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 2, 2016.

## II. Discussion

### A. Dismissal Under Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Rule 12(b)(1) provides for dismissal where the Court lacks jurisdiction over the subject matter of the lawsuit or claim. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality

inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). While the Memorandum and Recommendation of the Honorable Dennis L. Howell, United States Magistrate Judge (now retired), does not mention Rule 12(b)(1),[2] and only briefly discusses plaintiff's failure to exhaust at page eight of his opinion, it is clear that this Court lacks subject-matter jurisdiction over plaintiff's claims asserted under Title VII in Counts I through VI.

In Counts I, II, III, IV, V, and VI of the Amended Complaint, plaintiff alleges that defendant violated Title VII with respect to her employment.[3] Before bringing a civil suit under Title VII, a litigant must first file an administrative charge with the EEOC. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citing 42 U.S.C.A. § 2000e-5(f)(1)). "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). The

---

[2] While this Court discussed plaintiff's failure to exhaust her administrative remedies at several points in its previous Order (#16), it too -- in all fairness -- failed to cite to Rule 12(b)(1) or clearly distinguish which claims were dismissed under Rule 12(b)(1) and which claims were dismissed under Rule 12(b)(6). Through issuance of this Order on remand, the Court has attempted to make that distinction clear without exceeding the Mandate, all to aid further review if sought.

[3] Each of Counts I through VI contain claims under Title VII and under the ADA. The Title VII claims contained within these Counts are considered under Rule 12(b)(1) and the ADA claims are considered under Rule 12(b)(6).

scope of the EEOC charge defines the scope of any ensuing lawsuit. Id. The Fourth Circuit has held that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Technologies Applications & Service, Co., 80 F.3d 954, 963 (4th Cir. 1994).

In the Charge, plaintiff checked the boxes for "retaliation" and "disability." See Def. Ex. 1. She did not check any boxes for characteristics protected under Title VII. Id. In the "particulars" section of the Charge, plaintiff alleged that she was subjected to a "hostile work environment" because of her "association with a disabled family member" and "regarded as disabled." Id. Plaintiff's Charge concluded by stating: "I believe I have been discriminated against because of a disability and for opposing practices in violation of Title I of the Americans with Disabilities Act of 1990." Id. Plaintiff failed to make allegations in the "particulars" section of the Charge relating to any type of discrimination protected by Title VII. Id. As a result, plaintiff failed to exhaust her administrative remedies under Title VII. In making that determination, the Court looked to the factual allegations and the narrative to determine whether the charges raised in this Court have been fairly presented in the administrative process. Howell v. N. Carolina Cent. Univ., No. 1:16CV576, 2017 WL 2861133, at *6 (M.D.N.C. July 5, 2017). Finding that they were not fairly presented, this Court dismissed those claims as it had no subject-matter jurisdiction over the Title VII claims in Counts I through VI.

### B. Dismissal Under Rule 12(b)(6): Failure to State a Claim

In determining whether a claim can survive a motion under Rule 12(b)(6), the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) that the "no set of facts"

standard only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id. at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 561 (alteration in original). Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a claimant must allege facts in his complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a claimant must plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id. at 570 (emphasis added).

Post-Twombly, the Court revisited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 678. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability ...." Id. While the court accepts plausible factual allegations made in a claim as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. If her explanation is plausible, her complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

### 1. Plaintiff's ADA Claims

In Counts I through VI, plaintiff also alleged that defendant violated the Americans with Disabilities Act ("ADA"). She alleged that she was subjected to discrimination on the basis of a hearing disability and subjected to retaliation for various reasons. Plaintiff also alleges that she experienced a hostile work environment. As the Court concluded in its earlier Order, plaintiff asserted three theories in support of her ADA claims: discriminatory termination; retaliation; and hostile work environment. Those contentions were discussed at length in the Court's previous Order (#16) at 6-10, which the Court incorporates by reference, ultimately resulting in dismissal under Rule 12(b)(6). Thus, plaintiff's ADA claims contained in Counts I through VI were dismissed under Rule 12(b)(6) and not Rule 12(b)(1).

### 2. Family Relationship Discrimination Claim

For the reasons earlier discussed, Order (#16) at 10-11, neither Title VII nor the ADA provide for a protected class of individuals who have family members who are felons. For the reasons previously discussed, this claim was dismissed under Rule 12(b)(6).

### 3. Plaintiff's Intentional Infliction of Emotional Distress Claim

In support of her claim of Intentional Infliction of Emotional Distress ("IIED"), plaintiff alleges that a supervisor and a loss prevention officer treated her horribly in a meeting, that defendant accused her of being a thief and a drug addict, that defendant mentioned a crime that her mother committed to spite her, and that another supervisor made her drive 90 minutes to another location before firing her instead of terminating her via phone or email. As discussed in the previous Order, those allegations, even when taken as true, will not suffice under North Carolina law to state an IIED claim. This claim has been dismissed under Rule 12(b)(6).

### 4. Plaintiff's *Federal* Unfair and Deceptive Trade Practices Act Claim

While there is a Federal Unfair and Deceptive Trade Practices Act, 15 U.S.C. § 45(a)(1), plaintiff lacks authority to bring such a claim in this Court as Congress has assigned that right to the Federal Trade Commission not individual litigants. This claim has been dismissed under Rule 12(b)(6) inasmuch as plaintiff is not a proper party to bring such a claim.

### 5. Plaintiff's North Carolina Unfair and Deceptive Trade Practices Act Claim

Plaintiff's claim under the NC UDTPA was based on the managers allegedly telling her she was not allowed to bring an attorney to her meeting with management. Plaintiff cannot base a state UDTPA claim on such allegations, as North Carolina UDTPA claims involve only "two types of interactions in the business setting: (1) interactions between businesses, and (2) interactions between businesses and consumers." White v. Thompson, 364 N.C. 47, 52 (2010). North Carolina has been clear that the state's UDTPA is not intended to apply to "employer-employee relations." Dalton v. Camp, 353 N.C. 647, 658 (2001). This claim has been dismissed under Rule 12(b)(6).

### 6. Plaintiff's Defamation Claim

As discussed in the previous Order (#16), plaintiff's defamation claims for slander and libel are time barred. As time barred, these claims were dismissed under Rule 12(b)(6). Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).[4]

---

[4] Holding "where facts sufficient to rule on an affirmative defense"—including "the defense that the plaintiff's claim is time-barred"—"are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."

## C. Whether to Allow Further Amendment or Dismiss with Prejudice

With that summary and clarification of which claims were dismissed under Rule 12(b)(1) and which were dismissed under Rule 12(b)(6), the Court will return to the task on remand.

This Court must now determine whether to allow plaintiff a further opportunity to amend the claims the Court dismissed or, failing such allowance, to dismiss the claims over which this Court has jurisdiction with prejudice so that plaintiff would have a final, appealable order.

In making that determination, the Court finds the appropriate starting point to be plaintiff's post-M&R Motion to Amend, which the Court denied as futile. In determining whether a proposed amendment is futile, "the court should apply the same standard applied under Fed.R.Civ.P. 12(b)(6)." Boston v. Ocwen Loan Servicing, LLC, 3:12CV451, 2013 WL 122151, *1 (W.D.N.C. Jan. 9, 2013) (citations omitted). Thus, when a proposed amendment fails to state a claim upon which relief could be granted, it should also be denied as futile. Boston, 2013 WL 122151; Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). In its earlier Order (#16), this Court determined that "the proposed amendments … are futile inasmuch as they neither cure the errors found by Judge Howell nor assert any additional claims that would, as pled, be viable." Id. at 3.

On remand, the Court has again discussed plaintiff's proposed amendments and again concludes that the proposed amendment would be futile as they would be immediately subject to dismissal under Rule 12(b)(1) and/or Rule 12(b)(6). Further, as discussed below in the Conclusion, the Court cannot conceive of any plausible amendments that would cure the defects in this particular case.

### 1. Proposed Amendments to Title VII Claims

In her Motion to Amend, plaintiff first proposed that she be allowed to assert amended Title VII claims. In support of that request, plaintiff alleged that she was wrongfully discharged and discriminated against because of her sex, because she is "religious," and because her mother was an "ex-convict." For the reasons discussed above concerning exhaustion, such purported Title VII claims would, even if otherwise viable, be subject to immediate dismissal under Rule 12(b)(1) as plaintiff did not fairly raise them before the EEOC. Marchmon v. Securitas Sec. Servs., No. 3:12-CV-708-GCM, 2013 WL 12244907, at *2 (W.D.N.C. July 2, 2013). The proposed claims based on sex and religion would also fail under Rule 12(b)(6) for want of supporting allegations. As to her related-to-a-felon claim, being a family member of someone convicted of a crime is not a protected class under Title VII.

Rule 41(b) provides in relevant part that, "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule . . . except one for lack of jurisdiction . . . operates as an adjudication on the merits." Fed.R.Civ.P. 41(b) (emphasis added). As other courts have found,

> [d]ismissal for lack of subject-matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case. *See Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir.2005). It is true that, in rare cases where a district court lacks jurisdiction, the court may dismiss a claim with prejudice "as a sanction for misconduct." *Id.* But there was no finding of misconduct here.

Revere v. Wilmington Finance, 406 Fed.Appx. 936, 937 (6th Cir. 2011). Here, there has been absolutely no misconduct by plaintiff in her pleadings.

Having previously determined to not allow the proposed amendment of plaintiff's Title VII claims contained in Counts I through VI, the Court finds the possibility of further amendment also to be futile. The dismissal of the Title VII claims in Counts I through VI will, however, be without prejudice as this Court lacks jurisdiction over those claims.

### 2. Proposed New ADEA Claim

Plaintiff next proposed that she be allowed to bring a claim under the Age Discrimination in Employment Act ("ADEA"), contending for the first time that she was discriminated against by defendant based on being over 40 years old. As previously determined, this amendment would be futile as she failed to assert a claim of age discrimination in her EEOC complaint.

Thus, even if allowed to amend, that claim would have to be dismissed without prejudice for lack of subject matter jurisdiction. The Court finds the possibility of further amendment futile.

### 3. Proposed Amendments to ADA Claim

In this proposed amendment, plaintiff seeks to add a claim under the ADA, in which she would assert that defendant discriminated against her due to her own hearing loss and due to an unspecified disability of her mother "which caused her to have criminal problems." She also asks permission to reassert a retaliation claim.

As to her hearing loss claim, review of the administrative charge does not reveal that she fairly raised a claim based on actual disability administratively.[5] Thus, any amendment to add an ADA claim for discrimination based on her own impairment would be subject to immediate dismissal under Rule 12(b)(1) and therefore futile. As to her proposed associational claim, that claim, if allowed, would fail under Rule 12(b)(6) because plaintiff has failed to allege what

---

5  Defendant pointed out in its Response to the Motion to Amend that the EEOC determined that defendant's ADA claim was limited to an "associational claim" and a "regarded as" claim. Response (#15) at 9

disability her mother either suffered or was perceived to suffer or, for that matter, that defendant perceived her mother suffered from a disability. The Amended Complaint simply suggests that defendant improperly accused her of being a thief and a drug addict because of her mother's criminal conviction. There are no facts in the Amended Complaint or in the proposed further amendment which could support this claim going forward. Finally, as to any potential ADA retaliation claim, there is no assertion of protected activity oppositional or other activity prior to termination.

Thus, the Court will not allow further amendment or additions to plaintiff's ADA claims as such would be futile.

### 4. Proposed New Claim for State Law Wrongful Discharge Claim

Finally, plaintiff sought to bring, for the first time, a claim for wrongful discharge in violation of North Carolina public policy. She contends that being told she could not bring an attorney to an employee-employer meeting, that she could not tape record the meetings, and that she was being fired for violating North Carolina concerning filling emergency prescriptions all violate North Carolina public policy.

"In North Carolina, employment is generally terminable by either the employer or employee for any reason where no contract exists specifying a definite period of employment." McDonnell v. Guilford Cty. Tradewind Airlines, Inc., 194 N.C. App. 674, 677 (2009) (citing Rucker v. First Union Nat'l Bank, 98 N.C. App. 100, 102 (1990)). "This is a bright-line rule with very limited exceptions." Id. Specifically, "[a]n at will employee may not be terminated: '(1) for refusing to violate the law at the employers [sic] request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy.'" Id.

(quoting Ridenhour v. IBM, 132 N.C.App. 563, 568–69, 512 S.E.2d 774, 778 (1999)). None of the employer-actions alleged by plaintiff would support a wrongful discharge claim under North Carolina's narrow exceptions to the employment-at-will doctrine.

Thus, even if amendment were allowed, a wrongful discharge claim would be subject to immediate dismissal under the facts of this particular case. The Court finds the possibility of further amendment futile.

## III.     Conclusion

Where an error resulting in dismissal cannot be cured by amendment, dismissal should be with prejudice. Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 624 (4th Cir. 2015). In compliance with the Mandate, the Court has first closely reviewed and then summarized its earlier determination concerning the dismissal and the denial of the Motion to Amend. In conducting that review, the Court not only reaffirms and incorporates its earlier decision but determines that there is no plausible way to amend the previously dismissed Amended Complaint in such a manner as to allow plaintiff to move forward.

While this Court is convinced that plaintiff truly believes that she was terminated because of her mother's criminal record, because she had previously left defendant's employment and was incorrectly perceived to have "poached" defendant's pharmacy employees, or because of the consent order of discipline from the NCBOP, those reasons are not *federally* actionable under anti-discrimination statutes. As to her attempts at asserting recognized federal claims, her Title VII claims are barred for lack of fairly presenting them to the EEOC and her ADA claims fail under Rule 12(b)(6). Plaintiff's attempts to cure these issues have been unavailing and the Court can conceive of no set of plausible amendments that could cure the problems discussed. For that and

the reasons discussed above, the Court will dismiss the claims over which it has jurisdiction with prejudice and the claims over which it lacks jurisdiction without prejudice.

**ORDER**

**IT IS, THEREFORE, ORDERED** that for the reasons discussed herein and previously discussed in the Court's Order affirming the Memorandum and Recommendation,

(1) Plaintiff's Title VII claims, contained in Counts I through VI of the Amended Complaint, are **DISMISSED** without prejudice as this Court lacks jurisdiction over those claims;

(2) Plaintiff's ADA claims, contained in Counts I through VI of the Amended Complaint, are **DISMISSED** with prejudice; and

(3) Plaintiff's supplemental state-law claims and the federal Unfair and Deceptive Trade Practices Act Claim are **DISMISSED** with prejudice.

The Clerk of Court is respectfully instructed to enter an Amended Judgment consistent with this determination.

Signed: March 28, 2019

Max O. Cogburn Jr.
United States District Judge